**In re HAUSAUER IMPLEMENT CO., Debtor.**

**Bankruptcy No. 82–05615.**

United States Bankruptcy Court, D. North Dakota.

Dec. 15, 1983.

Max Rosenberg, Bismarck, N.D., for debtor.

Lawrence Dopson, Mandan, N.D., for Krause Imp. Co.

Trustee William Westphal, Minneapolis, Minn.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the Court on a Motion filed by the Debtor Hausauer Implement Co., on December 1, 1982, seeking an order of this Court authorizing it to terminate a franchise agreement existing between it and Krause Implement Co., Inc. Further, as a part of its Motion, the Debtor, relying upon Chapter 51–07 of the North Dakota Century Code, seeks payment of any amounts over and above the indebtedness owing to Krause. By objection filed December 15, 1982, Krause similarly requested that the dealer agreement be terminated but alleges that Chapter 51–07 is not applicable to the situation existing between the parties and, therefore, resists application of this Chapter to the instant situation. The parties entered into a stipulation of facts on February 16, 1983, and thereafter provided the Court with briefs in support of their respective positions.

From the stipulation of facts, it is established that the Debtor and Krause entered into a Dealer Agreement in August of 1977 whereby the Debtor was permitted to purchase Krause Implement's equipment and parts. In the possession of the Debtor are nine implements plus individual parts which it wishes to return to Krause and receive payment for such equipment as provided for by Chapter 51–07 of the Code. Since both parties are in substantial agreement

with respect to the appropriateness of terminating the agreement itself, the Court will only address the issue of whether Chapter 51–07 of the North Dakota Century Code applied to the instant situation.

Section 51–07–01 of the North Dakota Century Code provides, in part, as follows:

Whenever any person, firm, or corporation engaged in the business of selling and retailing farm implements and repair parts for farm implements, or in the business of selling and retailing automobiles or trucks, or repair parts for automobiles or trucks, enters into a written contract whereby such retailer agrees to maintain a stock of parts or complete or whole machines, or attachments with any wholesaler, manufacturer, or distributor of farm implements, machinery, attachments, or repair parts, or automobiles, trucks, or repair parts, and either such wholesaler, manufacturer, or distributor or the retailer desires to cancel or discontinue the contract, such wholesaler, manufacturer, or distributor, shall pay to such retailer unless the retailer should desire to keep such merchandise, a sum equal to one hundred percent of the net cost of all current unused complete farm implements, machinery, attachments, automobiles, and trucks including transportation charges which have been paid by such retailer, and eighty-five percent of the current net prices on repair parts, including superseded parts listed in current price lists or catalogs which parts have previously been purchased from such wholesaler, manufacturer, or distributor, and held by such retailer on the date of the cancellation or discontinuance of such contract or thereafter received by such retailer from the wholesaler, manufacturer, or distributor.

The foregoing provision was intended to remedy the problem which arises when a dealer has been required by the terms of the franchise agreement to invest in purchases of equipment in order to maintain a specified level of inventory parts or machinery and thereby using cash assets that

would ordinarily be available for operating expenses. In such instances, the manufacturer shares the fault should the situation arise where the dealer is unable to continue in business. This intent appears to be clear from the language of the statute itself as it becomes operative where under the terms of the written contract the dealer agrees to maintain a stock of parts or complete machines. This is to be contrasted from the situation where the dealer voluntarily purchases equipment and is under no specific obligation to maintain a certain level of parts or whole machines. In this latter situation, the manufacturer is less at fault should a failure occur in the dealer's business. It is the opinion of this Court that section 51–07–01 of the Code is not applicable in instances where the written agreement does not specifically require a dealer to maintain a stock of parts or whole machines.

A review of the agreement entered into between the Debtor and Krause, which was submitted to the Court as a stipulated exhibit, provides, in part:

> DEALER agrees to buy for resale and KRAUSE agrees to sell to DEALER for resale KRAUSE Implements, Parts and Accessories upon the conditions herein set forth and as set forth in the "Schedule of Terms to Dealers" as published by KRAUSE and in effect at the date of purchase. Approval of this agreement is not contingent upon purchase by DEALER of any implements, equipment or parts. (Paragraph 1 of Dealer Agreement)

A review of the complete Dealer Agreement does not reveal any specific requirement that the Debtor maintain any particular level of stock of Krause's equipment. It only requires that it purchase various items of equipment from Krause. Thus, the agreement was to be approved regardless of whether the Debtor ever made any purchases from Krause. This is not the type of relationship which was envisioned by the framers of section 51–07–01 of the North Dakota Century Code. Accordingly, and for the reasons above stated, the Court will not apply section 51–07–01 to the situation now before it. Accordingly,

IT IS ORDERED that the Debtor's Motion for termination of the Krause Implement Co., Inc. dealer agreement be and the same is hereby GRANTED. That portion of the Motion as it pertains to application of Chapter 51–07 is DENIED.